JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Harleysville Worcester Insurance Company

## DEFENDANTS

Dale Waterproofing Systems, Inc., 237 King Partners, LLC a/k/a 237 East King Partners, LLC, Bozzuto Construction Company

**(b)** County of Residence of First Listed Plaintiff    Franklin County, Ohio
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Chester County, PA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
William T. Salzer, Esquire, Swartz Campbell, LLC
1650 Market Street, 38th Floor, Phila., PA 19103
Phone: 215-299-4346; email: wsalzer@swartzcampbell.com

Attorneys *(If Known)*
Matthew Dempsey, Esquire for Bozzuto Construction Company
Edward N. Flail, Jr., Esquire for Dale Waterproofing
Lane F. Kelman, Esquire for 237 King Partners LLC

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1  U.S. Government<br>Plaintiff | ☐ 3  Federal Question<br>*(U.S. Government Not a Party)* | |
| ☐ 2  U.S. Government<br>Defendant | ☒ 4  Diversity<br>*(Indicate Citizenship of Parties in Item III)* | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place<br>of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place<br>of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | of Property 21 USC 881 | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | ☐ 690 Other | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original<br>Proceeding | ☐ 2 Removed from<br>State Court | ☐ 3 Remanded from<br>Appellate Court | ☐ 4 Reinstated or<br>Reopened | ☐ 5 Transferred from<br>Another District<br>*(specify)* | ☐ 6 Multidistrict<br>Litigation -<br>Transfer | | ☐ 8 Multidistrict<br>Litigation -<br>Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §2201 and 28 U.S.C. §1332
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☐ Yes    ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions:)*

JUDGE    Cynthia M. Rufe

DOCKET NUMBER    23-cv-01302

DATE    8/11/2023

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: ___One Nationwide Plaza, Columbus, Ohio 43215_____

Address of Defendant: ___229-B NA, Exton Business Center, Exton, PA 19341_____

Place of Accident, Incident or Transaction: ___237 King Street, Malvern, PA 19355_____

| | |
|---|---|
| **RELATED CASE IF ANY:** | |

Case Number: ___23-cv-01302_____  Judge: ___Cynthia M. Rufe_____  Date Terminated_____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1.  Is this case related to property included in an earlier numbered suit pending or within one year    Yes ☐  No ☐
    previously terminated action in this court?
2.  Does this case involve the same issue of fact or grow out of the same transaction as a prior suit    Yes ☒  No ☐
    Pending or within one year previously terminated action in this court?
3.  Does this case involve the validity or infringement of a patent already in suit or any earlier    Yes ☐  No ☐
    Numbered case pending or within one year previously terminated action of this court?
4.  Is this case a second or successive habeas corpus, social security appeal, or pro se case filed    Yes ☐  No ☐
    by the same individual?

I certify that, to my knowledge, the within case ☐ **is** / ☐ **is not** related to any now pending or within one year previously terminated
action in this court except as note above.

DATE: __8/11/23__     _____     __42657__
                         *Attorney-at-Law (Must sign above)*     *Attorney I.D. # (if applicable)*

---

**Civil (Place a √ in one category only)**

**A.  *Federal Question Cases:***

- ☐ 1.  Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2.  FELA
- ☐ 3.  Jones Act-Personal Injury
- ☐ 4.  Antitrust
- ☐ 5.  Wage and Hour Class Action/Collective Action
- ☐ 6.  Patent
- ☐ 7.  Copyright/Trademark
- ☐ 8.  Employment
- ☐ 9.  Labor-Management Relations
- ☐ 10.  Civil Rights
- ☐ 11.  Habeas Corpus
- ☐ 12.  Securities Cases
- ☐ 13.  Social Security Review Cases
- ☐ 14.  Qui Tam Cases
- ☐ 15.  All Other Federal Question Cases. *(Please specify):*_____

**B.  *Diversity Jurisdiction Cases:***

- ☒ 1.  Insurance Contract and Other Contracts
- ☐ 2.  Airplane Personal Injury
- ☐ 3.  Assault, Defamation
- ☐ 4.  Marine Personal Injury
- ☐ 5.  Motor Vehicle Personal Injury
- ☐ 6.  Other Personal Injury *(Please specify):*_____
- ☐ 7.  Products Liability
- ☐ 8.  All Other Diversity Cases: *(Please specify)*_____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration)*

I, ___William T. Salzer_____, counsel of record *or* pro se plaintiff, do hereby certify:

- ☐  Pursuant to Local Civil Rule 53.2 § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action
  case exceed the sum of $150,000.00 exclusive of interest and costs;

- ☒ xx  Relief other than monetary damages is sought.

DATE: __8/11/2023__     _____     __42657__
                         *Attorney-at-Law (Sign here if applicable)*     *Attorney ID # (if applicable)*

NOTE: A trial de novo will be a jury only if there has been compliance with F.R.C.P. 38.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**SWARTZ CAMPBELL LLC**
**BY:**   William T. Salzer, Esquire          Attorneys for Plaintiff
Identification No. 42657
One Liberty Place - 38th Floor
1650 Market Street
Philadelphia, PA 19103
(215) 299-4346
wsalzer@swartzcampbell.com

| | |
|---|---|
| HARLEYSVILLE WORCESTER INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>DALE WATERPROOFING SYSTEMS, INC., 237 KING PARTNERS, LLC AKA 237 EAST KING PARTNERS, LLC, BOZZUTO CONSTRUCTION COMPANY,<br><br>Defendants. | CIVIL ACTION<br><br>NO. |

## DECLARATORY JUDGMENT COMPLAINT

Plaintiff, Harleysville Worcester Insurance Company ("Harleysville"), by and through its undersigned counsel, and pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201, institutes this action for declaratory judgment. In support of this civil action, Plaintiff avers as follows:

1

## I.    **PARTIES**

1.    Plaintiff Harleysville Worcester Insurance Company is a corporation organized and existing under the laws of the state of State of Ohio and maintains a principal place of business at One Nationwide Plaza, Columbus, Ohio 43215.

2.    Defendant, Dale Waterproofing Systems, Inc. is corporation organized and existing under the laws of the Commonwealth of Pennsylvania which maintains a principal place of business and/or a registered address at 229-B NA, Exton Business Center, Exton, Pennsylvania 19341.

3.    Defendant, 237 King Partners, LLC is a Pennsylvania limited liability company which upon information and belief maintains a principal place of business at 55 Country Club Drive, Suite 200, Downington, Pennsylvania and is comprised of three members, two of whom reside in Pennsylvania (Eli Khan and David Della Porta) and one person who resides in the state of Florida (Gary Toll).

4.    Defendant Bozzuto Construction Company is a corporation organized and existing under the laws of the state of Maryland with a principal place of business located at 6406 Ivy Lane, Suite 700, Greenbelt, Maryland 20770.

## II.    **JURISDICTION AND VENUE**

5.    This action is brought under the Declaratory Judgments Act, 28 U.S.C. §2201 and 28 U.S.C. §1332. This court has jurisdiction over this action because the amount in controversy is over $75,000.00 and the lawsuit involves citizens of different states.

2

6.    Venue in this court is appropriate as the underlying litigation to which the declaratory judgment action relates is pending before an Arbitrator in Pennsylvania; one or more transactions or occurrences took place within this judicial district; and one or more defendants reside or maintain a principal place of business within this judicial district.

## III.    STATEMENT OF FACTS

### A.    THE UNDERLYING ARBITRATION ACTION

7.    237 King Partners, LLC a/k/a 237 East King Partners, LLC (hereinafter "Owner") has initiated an Arbitration Demand against Bozzuto Construction Company ("Bozzuto") in which Owner alleges that Bozzuto was retained to construct the Eastside Flats Apartment complex located at 237 East King Street Malvern, Pennsylvania, which consisted of two four-story structures housing 190 apartments.  A true and correct copy of the Statement of Claim submitted pursuant to a contractual arbitration is attached as Exhibit "A".  The common law arbitration is assigned to the Hon. James F. Proud (hereinafter "the Underlying Action").

8.    In the Owner's Statement of Claim, it is alleged that Bozzuto failed to adequately perform the construction contract by reason of the improper installation of the waterproofing membrane underlying the terraces in the structures; the use of improper materials in connection with that work; and the failure to install required "two-stage" drains in the terraces. See Introductory Statement, Statement of Claim, Exhibit "A".

3

9.    The Owner alleges that as a result of Bozzuto's work, water intrusion has occurred, causing damage to the property, resulting in time and expense to investigate and remediate the property.  Id.

10.    The Owner alleges that "water intrusion occurred in both buildings that was capable of being observed with the naked eye" and that it flowed from the three exterior terrace courtyard areas and caused damage to several portions of the project including the parking garage structure.  Id. at pp. 2-3.

11.    The Owner alleges that the water intrusion has resulted in degraded conditions of the terrace decks and in the parking garage and that the water intrusion resulted in tenant complaints.  Id.

12.    Bozzuto instituted a Joinder Claim against Dale Waterproofing Systems, Inc. ("Dale") under an arbitration contract provision in which Bozzuto averred that to the extent that there were defects in the construction of the project as alleged by the Owner, those defects were caused by Dale's failure to properly perform its scope of work under a subcontract with Bozzuto.  A true and correct copy of the Joinder Claim is attached as Exhibit "B".

13.    In its Joinder Claim, Bozzuto seeks recovery against Dale for breach of a subcontract and under theories of contribution and indemnification to the extent that liability is imposed on Bozzuto.  Id.

14.    On July 31, 2012, Bozzuto and Dale entered into a subcontract under which Dale agreed to perform the waterproofing scope of work for the construction

4

project. A true and correct copy of the July 31, 2012 Subcontract Agreement is attached as Exhibit "C".

15.　The initial Scope of Work for the Subcontract was to supply and install below grade and above grade waterproofing membranes for the Plaza Decks and Foundation Walls of Buildings A and B of the complex.　See Scope of Work to July 31, 2012 Subcontract Exhibits "2" and "4", attached hereto as part of Exhibit "C".

16.　Bozzuto and Dale agreed to a Change Order (#001) dated March 14, 2013 pursuant to which Dale agreed to perform waterproofing for the balconies on Building A and B.　A true and correct copy of the Change Order is attached as Exhibit "D".

17.　On September 25, 2013, Bozzuto and Dale agreed to a Change Order for the performance of Building B waterproofing repairs.　A true and correct copy of said Change Order is attached as Exhibit "E".

18.　On November 11, 2013, Bozzuto and Dale agreed to a Change Order (#003) pursuant to which Dale agreed to perform pool area waterproofing.　A copy of the Change Order is attached as Exhibit "F".

19.　The Change Order in connection with the pool area waterproofing work contained a Scope of work set forth in an October 2, 2013 transmittal from Dale to Bozzuto, a copy of which is attached as Exhibit "G".　This included the supply and installation of a spray applied Rub-R-Wall Waterproofing Membrane with a RUFCO reinforcing sheet on the exterior walls and base deck area of the pool pit, over the top of the pool walls and down the exterior deck side of the pool walls, the installation of

the membrane on interior surfaces of the pool pit and installation of a drainage composite on top of the membrane onto the interior surfaces of the pool pit.

20.     On August 20, 2014, Terracon Consultants, Inc. ("Terracon") prepared a Property Condition Report pertaining to the construction and existing conditions. A true and correct copy of the report is attached as Exhibit "H".

21.     The Terracon report identifies a recommended capital reserve for "additional investigation and repairs to water leaks from swimming pool into parking garage of Building B". The Terracon report identifies that a gutter system was installed to collect leaking water from the swimming pool located above the parking garage in Building B. Terracon reports that a waterproofing membrane was to have been installed under the pool area, however, the existence or installation method could not be verified without additional destructive testing. It recommended additional investigation to determine the cause of leaking into the parking garage of Building B.

22.     The Terracon report contains photo documentation of one of two remedial gutters installed on the underside of the garage ceiling below the courtyard pool which upon information and belief was for the purpose of collecting leaking water.

23.     In June 2014, a representative of Bozzuto, David Byzek, communicated with Dale's owner with regard to the water leaks in an attempt to determine their source.

24.     Upon information and belief, the water leaks in the garage of Building B were occurring prior to June 2014, causing damage to areas of the garage ceiling and

possibly to tenants' vehicles parked in the garage or was interfering with the use of the garage to such an extent that a gutter system was installed to collect leaking water.

25.    On January 19, 2015, Michael Connolly of the property manager Stoltz USA emailed David Byzek of Bozzuto to state that the pool appeared to be leaking again. At that time, the plan was to patch the garage ceiling in the area of the water leaks. Thereafter, the Owner or its representative prepared patches of the garage ceiling or sought to coat the ceiling in an attempt to stem the leaks.

26.    The Owner commissioned an investigation by Structural Design Associates, Inc. ("SDA") of a courtyard terrace at Building B including the terrace pool construction and to evaluate the existing upper-level garage leaks at the building to determine whether the construction was correctly performed and to evaluate the cause of damage to the garage roof structure, community room interior leaks and damage to vehicles parked in the garage resulting from terrace water leaks. The SDA report dated September 14, 2017 is attached as Exhibit "I".

27.    SDA opines that the Rub-R-Wall waterproofing membrane installed at Building B was constructed in a negligent manner, that it did not comply with standards of good terrace waterproofing materials, industry standards and applicable building codes.

28.    SDA opines that the construction defects were a cause of the water infiltration damage to the garage.

29.    According to the SDA report, it directed the excavation of portions of the concrete topping slab from the pool terrace to assess the method of terrace

waterproofing and drainage construction to determine why the pool terrace roof system was leaking into the garage and causing structural and property damage.

30.    SDA opined that the Rub-R-Wall system was a poor selection for a horizontal waterproofing membrane system above the garage and that it allowed inordinate levels of moisture to infiltrate and damage the garage roof structure.

31.    Among its findings, SDA concluded that there was water ponding under the concrete topping slab and that the Rub-R-Wall membrane was delaminating from the pool wall and that the compatibility of the pool membrane bonding to the Rub-R-Wall waterproofing membrane was not sound.

32.    SDA concluded that the Rub-R-Wall terrace membrane extended under a masonry wall without a drainage board or rigid insulation.

33.    SDA concluded that the Rub-R-Wall membrane was missing a vertical wall termination at the exterior parapet walls, resulting in a delamination of the membrane.

34.    SDA concluded that the termination of the membrane around a drain hole for a drain near a planter wall was poorly executed.

35.    SDA opined that the terrace drainage system was improperly installed and allows water to pond on the structural concrete terrace/garage roof and that the Rub-R-Wall membrane was an incorrect product for a horizontal roof system that would have ponding water.

36.    The Owner has asserted that leaks have continued to infiltrate the garage despite the construction of additional drains under the pool in 2019 and

attempted repairs of the garage ceiling involving patches and application of a spray on insulation.

37.    The Owner asserts that the removal and replacement of the waterproofing membrane from underneath the terraces is necessary to remediate the leaks.  It seeks recovery from the general contractor, Bozzuto for the amounts paid to repair and replace Bozzuto's defective work, investigation expenses, remediation costs including those for recoating the garage structure and drywall repairs, losses involving vehicle damage and rent concessions given to tenants.

### B.    THE HARLEYSVILLE POLICY

38.    Harleysville Worcester Insurance Company issued a commercial general liability insurance policy to Modern Home Insulators of PA (Policy No. MPA 45538U) for the policy period October 22, 2014 through October 22, 2015.  A true and correct copy of said policy is attached as Exhibit "J".  Dale Waterproofing Systems, Inc. is a named insured.    Harleysville did not insure Dale prior to October 22, 2014. Harleysville did not insure Dale under any policy other than that of Policy No. MPA 45538U.

39.    Section I-Coverage A provides in pertinent part as follows:

1.    Insuring Agreement

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of ... "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for ... "property damage" to which this insurance does not apply.

b.    This insurance applies to ... "property damage" only if:

    (1)    The ... "property damage" is caused by an "occurrence" ...;

    (2)    The ... "property damage" occurs during the policy period; and

    (3)    Prior to the policy period, no insured listed under Paragraph 1 of Section II-Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that ... "property damage" had occurred, in whole or in part. If such a listed insured or authorized employee knew, prior to the policy period that the ... "property damage" occurred, then any continuation, change or resumption of such ... "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d.    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. Of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim;

    (1)    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    (2)    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3)    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

40.    The Policy contains Exclusions which provide that the insurance does not apply to:

b.    Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)    That the insured would have in the absence of the contract or agreement; or

(2)    Assumed in a contract or agreement that is an "insured contract" provided the ... "property damage" occurs subsequent to the execution of the contract or agreement...

k.    Damage to Your Product

"Property damage" to "your product" arising out of it or any part of it.

l.    Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard. This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m.    Damage to Impaired Property or Property Not physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

> (2)    A delay or failure by you or anyone acting on your
>        behalf to perform a contract or agreement in
>        accordance with its terms.

This exclusion does not apply to the loss of use of other property
arising out of sudden and accidental physical injury to "your
product" or "your work" after it has been put to its intended use.

41.    The Policy defines an "occurrence" to mean "an accident, including
continuous or repeated exposure to the substantially the same general harmful
conditions".

42.    The Policy contains an amendatory endorsement (CG-7326) which adds
Subparagraph f. to Paragraph 1 of the Insuring Agreement which states:

> f.    Damages because of "property damage" caused by an
>       "occurrence" to which this insurance applies is deemed to
>       include physical damage to property other than "your
>       work" or "your product" which is included within the
>       "products-completed operations hazard" and which results
>       from either your faulty workmanship or the faulty
>       workmanship of those persons or organizations acting on
>       your behalf. Provided however, that this coverage does not
>       apply to "property damage":
>
> 1.    that is intended by you or those acting on your behalf
>       or that is the reasonably expected result of either
>       your faulty workmanship or the faulty workmanship
>       of those acting on your behalf; or
>
> 2.    that results in whole or in part from your failure to
>       perform a contract in accordance with its
>       specifications, express warranties or other mutually
>       agreed upon conditions, except that this provision
>       does not apply to liability for "property damage" that
>       an insured would have had even in the absence of
>       such contract of agreement.

43. The Policy contains an additional insured endorsement (CG-7263), a true and correct copy of which is attached as Exhibit "J".

A. Section II – Who Is an Insured is amended to include as an insured any person or organization for whom you are performing operations only as specified under a written contract ... that requires that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability caused, in whole or in part, by the acts or omissions of the "Named Insured", or those acting on behalf of the "Named Insured" in the performance of the "Named Insured's" work for the additional insured and included in the "products-completed operations hazard" which was performed for that insured only as specified under the "written contract".

B. The insurance provided to additional insured by this endorsement is limited to as follows:

1. The additional insured is covered only for such damages which are caused, in whole or in part, by the acts or omissions of the "Named Insured", or those acting on behalf of the "Named Insured", to which the additional insured is entitled to be indemnified by the "Named Insured" pursuant to the "written contract" and only for those sums that the additional insured is legally obligated to pay as damages under tort law principles to the injured party because of ... "property damage" ... to which this insurance applies, and in accordance with the sated policy limits and policy conditions. This coverage does not apply for defense or indemnity of the additional insured if state or federal law does not permit indemnification of the additional insured by the "Named Insured" for the claim of the third party.

2. The limits of insurance are those set forth in the policy and Declarations or those specified in the "written contract", whichever is less.

C. With respect to the insurance afforded to additional insured, the following exclusions are added:

13

2. Exclusions:

    a.    The insurance provided to the additional insured does not apply to … "property damage" arising out of an architect's, engineer's or surveyor's rendering of or failure to render any professional services including:

        (1)    The preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, drawings or specifications; and

        (2)    Supervisory, inspection, architectural, or engineering services.

    b.    This insurance does not apply if the "written contract" was not executed by the "Named Insured" prior to the "occurrence" giving rise to the additional insured's potential liability.

    c.    This insurance does not apply to the additional insured's liability to indemnify, defend or hold harmless a third party.

## COUNT I-DECLARATORY JUDGMENT (Coverage Trigger)

44.    The allegations of Paragraphs 1 through 43 are incorporated as if fully set forth herein.

45.    The determination of the applicable trigger of coverage for "property damage liability" under a commercial general liability insurance policy is when injury to tangible property is first reasonably manifest. Pa. National Mut. Cas. Ins. Co. v. St. John, 106 A. 3d 1 (Pa. 2014).

46.    Manifestation takes place when the injury is reasonably apparent and not at the time of either the cause of the injury or the identification of the cause. Id.

14

47.     Water leaks into the garage structure of the Eastside Flats apartment Building B which caused physical damage and/or loss of use of property first took place and was reasonably apparent prior to the inception of the Harleysville policy term on October 22, 2014.

48.     The Owner took measures to remediate the water leaks and to prevent further and continuing damage by installing a gutter system underneath the garage ceiling to collect water leakage. This remedial action was performed prior to October 22, 2014.

49.     The water leaks into the garage at Buildings A or B which took place prior, during or after the Harleysville policy term are alleged to have been the result of the poor workmanship in the installation of the waterproofing membrane or the supply of inadequate or incorrect waterproofing membrane materials by Bozzuto and Dale, which work was completed prior to the inception of the Harleysville policy term.

50.     The Owner informed Dale and Bozzuto of the fact of the water leaks into the garage in June 2014. Upon information and belief, the Owner informed Dale and Bozzuto that water leaks were either causing damage to the underside of the garage ceiling or were interfering with the use of the parking garage in the spring or summer of 2014.

51.     The continuation of water leaks causing damage to the garage or other property during the pendency of the Harleysville term or thereafter does not constitute "property damage" liability under the Policy where the first manifestation

15

of the damage due to Dale's work and product took place prior to the Harleysville policy term.

52.    Alternatively, upon information and belief, authorized representatives or managers of Bozzuto and Dale knew of the water leaks and related damage prior to the inception date of the Harleysville term such that any continuation of water leaks and related damage during the pendency of the Policy term is not covered by the Policy.

53.    Alternatively, upon information and belief, those persons who were authorized representatives or managers of Bozzuto and Dale to give Harleysville notice of an "occurrence" were aware that that damage to the underside of the garage ceiling took place prior to the inception of the Policy.

54.    Harleysville has no obligation to defend and/or indemnify Bozzuto or Dale for its/their alleged liability for the damages claimed by the Owner or Bozzuto for its Joinder Claim in the Underlying Action where the "property damage" claimed by the Owner was first manifest prior to the inception of the Harleysville policy term.

**WHEREFORE**, Harleysville Worcester Insurance Company respectfully requests that the Court enter a declaratory judgment in its favor, that the court issue a declaration that the Owner claims for recovery of "property damage" and related losses including that of the Joinder Claim which are the subject of the Underlying Action does not trigger coverage under the Harleysville policy term and that Harleysville is not obligated to defend or indemnify Dale Waterproofing Systems, Inc. or Bozzuto Construction Company for all claims asserted in the Underlying Action.

16

## COUNT II-DECLARATORY JUDGMENT  (No Occurrence)

55.    Plaintiff incorporates the averments of Paragraphs 1 through 54 as if fully set forth herein.

56.    The Owner and Bozzuto's allegations that the installation of the waterproofing membrane was deficient, defective for its intended purpose and/or not in compliance with the contract specifications, does not constitute an "occurrence" as defined by the Policy.

57.    The Amendatory Endorsement CG-7326 applies only to physical damage to property other than the insured's work or product and does not apply to non-physical or economic losses, nor does it apply to "property damage" to the insured's work or product.

58.    The Amendatory Endorsement CG-7326 does not apply to "property damage" that has resulted from Dale's failure to perform its contract in accordance with the specifications, warranties or other mutually agreed upon conditions.

**WHEREFORE,** Harleysville Worcester Insurance Company respectfully requests that the Court enter a declaratory judgment that Harleysville Worcester Insurance Company has no obligation to indemnify Dale Waterproofing, Inc. or Bozzuto Construction Company for any financial or economic losses including those for loss of use, damages awarded for the cost of investigation, testing, or evaluation of the work or product of Dale Waterproofing, or damages awarded for the cost to

access to inspect, remove, replace or repair the work or product of Dale Waterproofing, Inc.

## COUNT III-DECLARATORY JUDGMENT-(Workmanship Exclusions)

59.    Plaintiff incorporates the averments of Paragraphs 1 through 58 as if fully set forth herein.

60.    The Owner's claim for recovery of damages includes the costs to investigate and evaluate the cause of the water leaks; to access the claimed defective waterproofing membrane at terraces and balconies for purposes of replacement of the membrane and drains; the replacement of the membrane and drains; the installation of new pavers, planters, planter walls, and related general conditions.

61.    The Policy removes coverage for liability for "property damage" to "your product" which in this case was Dale's supply of a waterproofing membrane product and upon information and belief, drains, which is/are claimed to have been defective or inappropriate for this particular application.  The Policy does not afford coverage for the costs to access, remove or replace the waterproofing membrane or drains.

62.    The Policy removes coverage for liability for "property damage" to "your work" arising out of it or any part of it. In this case, Dale's work included the installation of the waterproofing membrane and drains. The Policy does not afford coverage for the cost to access, remove or replace the waterproofing membrane or drains.

63. The Policy removes coverage for liability for "property damage" to "impaired property". Upon information and belief, the damages sought by the Owner include those to access, remove and replace the waterproofing membrane in areas of the building where no leaks or resultant damage have transpired, including but not limited to balconies. Upon information and belief, Owner seeks to remove and replace the waterproofing membrane in these areas based on a belief that the membrane is defective, deficient or not fit for its intended purpose as a prophylactic measure against water intrusion and related damage. As the balconies and/or other building elements incorporate "your [Dale] product" or "your work" which is known or thought to be defective or inadequate, the Policy does not cover the costs to access, remove and replace "your product" or "your work" under the "impaired property" exclusion.

64. Upon information and belief, the loss of use of property did not arise out of a sudden and accidental physical injury to the waterproofing membrane, within the meaning of the exception to the "impaired property" exclusion.

**WHEREFORE**, Harleysville Worcester Insurance Company respectfully requests that the Court enter a declaratory judgment that Harleysville Worcester Insurance Company has no obligation to indemnify Dale Waterproofing, Inc. or Bozzuto Construction Company for any damages awarded for the cost of investigation, testing, or evaluation of the work or product of Dale Waterproofing, or damages awarded for the cost to access to inspect, remove, replace or repair the work or product of Dale Waterproofing, Inc.

19

## COUNT IV- DECLARATORY JUDGMENT (Additional Insured)

65.    Plaintiff incorporates the allegations of Paragraphs 1 through 64 as if fully set forth at length.

66.    The Policy's additional insured endorsement, Form CG-7263, limits the scope of additional insured status to claims involving sums that the additional insured is legally obligated to pay as damages under tort law principles to the injured party because of "property damage" to which the insurance applies (in accordance with the stated policy limits and conditions), for which the additional insured is entitled to be indemnified under a written contract with the named insured and only for liability caused in whole or in part by the acts or omissions of the named insured.

67.    The Owner's Statement of Claim against Bozzuto is that Bozzuto materially breached the parties' contract by failing to construct the project in accordance with the plans, specifications and manufacturer's instructions.    The Owner's Statement of Claim asserts, in the alternative, quasi-contract theories of recovery including that of unjust enrichment and quantum meruit, entitling it to the recovery of the same damages.

68.    The Owner's Statement of Claim against Bozzuto is not premised on a tort law claim and does not trigger application of the additional insured endorsement for the defense of Bozzuto.

69.    The additional insured endorsement does not apply to "property damage" arising out of an architect's or engineer's rendering of or failure to render any professional services including the preparing, approving, failing to prepare or

20

approve shop drawings, opinions, reports, surveys, field orders, change orders, drawings or specifications or supervisory, inspection, architectural or engineering services.

70.    As noted in the SDA report, the architect of record did not specify the waterproofing membrane product name or approved manufacturer system to be employed on the project. SDA further opines that the engineer of record supplied drawings which did not provide any waterproofing membrane installation requirements. SDA opines that the Rub-R-Wall membrane application specification was suitable for vertical basement wall construction and not a horizontal terrace waterproofing system. The failure to specify a suitable waterproofing membrane system was a failure to render a professional service including specifications within the scope of the professional services exclusion of the additional insured endorsement.

71.    A November 2, 2017 report prepared by Wiss, Janney Elstner Associates ("WJE") addressed to Michael J. Connolly of Stoltz Real Estate Partners which addresses the Eastside Flats courtyard waterproofing was for the purpose of providing a second opinion regarding the waterproofing. A true and correct copy of the November 2, 2017 WJE report is attached as Exhibit "K". WJE opines that no drainage details were provided in the architectural drawings and that permit specifications did not specify how to secure a slope-to-drain for the concrete slab. WJE opined that water accumulation on the membrane appears to be exacerbated because the structural drawings called for a flat slab construction and the architectural drawings did not specify a method to achieve a slope-to drain.

72.    The WJE report documents design and specification deficiencies as a causal factor for the water leakage and resultant damage.  Said damage is within the scope of the professional services exclusion of the additional insured endorsement.

73.    Bozzuto did not notify Harleysville of an "occurrence", claim or lawsuit or tender the defense of the Owner's claims in conformity with the requirements of the Policy's General Conditions.

**WHEREFORE**, Harleysville Worcester Insurance Company respectfully requests that the Court enter a declaratory judgment that Harleysville Worcester Insurance Company has no obligation to defend or indemnify Bozzuto Construction Company for the claims in the Underlying Action.

Respectfully submitted,

SWARTZ CAMPBELL LLC

William T. Salzer
Attorneys for Plaintiff

22